Gerald YOUNG, for himself and for and on behalf of all other persons similarly situated, Plaintiff,

v.

The SEABOARD CORPORATION, a Delaware corporation, et al., Defendants.

No. C 170–72.

United States District Court, D. Utah, Central Division.

May 24, 1973.

Adam M. Duncan, Paul N. Cotro-Manes, Salt Lake City, Utah, for plaintiff.

C. Keith Rooker, Ricardo B. Ferrari, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendants.

## MEMORANDUM AND ORDER

ALDON J. ANDERSON, District Judge.

Defendants moved July 31, 1972, to dismiss the complaint for failure to state a claim upon which relief can be granted. In a Memorandum and Order filed November 2, 1972, this court postponed decision of the motion pending disposition in the United States Court of Appeals for the Tenth Circuit of the case of Vincent v. Moench, 473 F.2d 430 (10th Cir., 1973), which raised related questions of law. That case was decided on the date cited.

Plaintiffs are shareholders of the now defunct National Bank of Coalville, N.A. (hereinafter, the "bank"). Defendants, it is alleged, precipitated the collapse of the bank and resulting worthlessness of plaintiffs' stock through a fraudulent scheme which apparently capitalized on the foibles of a small town bank. In furtherance of the scheme, it is said that defendants caused $1 million to be deposited in the bank in exchange for certificates of deposit and payment of an illegal "finder's fee." It is claimed the relatively large deposit and the finder's fee generated influence sufficient to prompt the bank to make at least $450,000 in bad loans, allegedly to defendants' designees. Apparently it is believed the uncollectable loans impaired the bank's capital and resulted in its collapse.

Under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[1] rule 10b–5, 17 C.F.R. § 240.-10b–5,[2] section 17 of the Investment

---

[1]. This section provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

[2]. This rule provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

Company Act of 1940, 15 U.S.C. § 80A–17, and section 206(4) of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–6(4), plaintiffs seek damages in the amount of the lost value of their bank stock.

Rule 10b–5 requires that actionable fraud be perpetrated "in connection with the purchase or sale of a security. . . ." This requirement has been interpreted to mean that a plaintiff usually cannot recover unless he is the purchaser or seller of a security which is the subject of a fraudulent transaction. E.g., Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L. Ed. 1356 (1952); Mount Clemens Industries, Inc. v. Bell, 464 F.2d 339 (9th Cir. 1972) (collecting cases). Plaintiffs do not meet this requirement since they were not involved as purchasers or sellers in the allegedly fraudulent deposit and loan transactions and award of the finder's fee.

The "purchaser-seller" or "Birnbaum" rule apparently began as an effort to limit rule 10b–5 to claims by (1) purchasers and sellers (2) "directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities (3) rather than at fraudulent mismanagement of corporate affairs. . . ." Birnbaum v. Newport Steel Corp., supra, 193 F.2d at 464; A. R. Bromberg, Securities Law: Fraud—S.E.C. Rule 10b–5 § 4.7(3) (1971) (hereinafter, "Bromberg, Securities Law").

The first and seemingly obvious limitation of the Birnbaum rule, that plaintiffs must in every case be purchasers or sellers, may have resulted from a restrictive reading of rule 10b–5's history. Birnbaum v. Newport Steel Corp., supra 193 F.2d at 463–464; Comment, The Purchaser-Seller Requirement of Rule 10b–5 Reevaluated, 44 U.Colo.L.Rev. 151, 152–53 (1972); Comment, The Birnbaum Doctrine Revisited: Standing to Sue Under Rule 10b–5 Analyzed, 37 Mo. L.Rev. 481, 483, 490–92 (1972); 41 Cinn.L.Rev. 495, 502 (1972). In any event, recent courts generally acknowledge, either by imaginative interpretation of the terms "purchaser" or "seller" or by the creation of outright exceptions, that a proper rule 10b–5 plaintiff need not meet a mechanistic purchaser-seller requirement. E.g., Kahan v. Rosenstiel, 424 F.2d 161, 170–173 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), and Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540, 546–547 (2d Cir. 1967) (shareholders who are neither purchasers nor sellers and who do not sue derivatively have standing under rule 10b–5 to claim injunctive relief); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 794 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970) and Vine v. Beneficial Finance Co., 374 F.2d 627, 635 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967) (shareholders faced with fraudulently promoted merger have standing under rule 10b–5 because merger would force them to "sell," i.e., obtain cash for, their shares); S.E.C. v. National Securities, Inc., 393 U.S. 453, 466–467, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), and Knauff v. Utah Construction and Mining Co., 408 F.2d 958 (10 Cir. 1969) (exchange of shares in merger amounts to purchase or sale); Drachman v. Harvey, 453 F.2d 722, 729–730, on rehearing in banc, 453 F.2d 736 (2d Cir. 1972), 47 N.Y.U.L.Rev. 607 (1972), (persons who hold stock in "street name" could sue derivatively under rule 10b–5 upon the authority of their corporation's "purchases").

The second and third Birnbaum limitations, that rule 10b–5 actions must be

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.

directed solely at typical securities fraud and not at corporate mismanagement, are now similarly compromised. In Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), the Court allowed plaintiff to sue under rule 10b–5 for the misappropriation of the proceeds of a bond redemption. In so doing, the Court, at 11 n. 7, 92 S.Ct. at 168, quoted with approval the decision in A. T. Brod & Co. v. Perlow, 375 F.2d 393, 397 (2d Cir. 1967):

> [We do not] think it sound to dismiss a complaint merely because the alleged scheme does not involve the type of fraud that is "usually associated with the sale or purchase of securities." We believe that § 10(b) and Rule 10b–5 prohibit *all* fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception. Novel or atypical methods should not provide immunity from the securities law.

As to rule 10b–5's coverage of corporate mismanagement or breach of fiduciary duty, the Court noted, 404 U.S. at 11, 12, 92 S.Ct. at 169, that such offenses are often inextricably tied to securities fraud and while "Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement," Congress did intend

> to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face. And the fact that creditors [plaintiff] of the defrauded corporate buyer or seller of securities may be the ultimate victims does not warrant disregard of the corporate entity. *The controlling stockholder owes the corporation a fiduciary obligation—one "designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders."* Pepper v. Litton, 308 U.S. 295, 307, [60 S.Ct. 238, 245, 84 L.Ed. 281].

404 U.S. at 11–12, 92 S.Ct. at 168 (footnote omitted; emphasis added).[3] As in *Bankers Life*, plaintiffs now commonly claim corporate mismanagement or breach of fiduciary duty in connection with securities transactions. *See also, e.g.,* Zeller v. Bogue Electric Manufacturing Corp., [Current] CCH Fed.Sec. L.Rep. ¶ 93,903 (S.D.N.Y.1973); Drach-

---

3. In view of the Court's suggestion that those who control a corporation owe a fiduciary duty to both creditors and shareholders cognizable under rule 10b–5 when breach of that duty touches securities transactions, it seems particularly anomalous that the Birnbaum rule might operate in the present case to bar the bank's shareholders while granting recovery under the rule to the bank's creditors (represented by the Federal Deposit Insurance Corporation). Although they haven't as yet, the present creditors might assert recovery under rule 10b–5 for the fraud in connection with the bank's securities transactions. Since they are suing on behalf of the bank, they would qualify as purchasers or sellers in the bank's securities under the Birnbaum rule. *E. g.,* Superintendent of Insurance v. Bankers Life and Casualty, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970). However, the shareholders, suing in their own right, would be barred by the Birnbaum rule since they were neither purchasers nor sellers. Should they attempt to sue derivatively in order to gain standing under the bank's securities transactions, they might find themselves barred by Fed.R.Civ.P. 23.1 since the bank's interest would already have representation by the creditors. *See also* note 6 *infra.*

In any event, the logic of the Birnbaum rule may be defective since it declares a shareholder suing derivatively to have the requisite personal stake, i. e. standing, to bring a rule 10b–5 action for the corporation's fraudulent transactions while the shareholder suing for himself does not. *E. g.,* Comment, The Birnbaum Doctrine Revisited: Standing to Sue Under Rule 10b–5 Analyzed, 37 Mo. L.Rev. 481 and esp. 488–90 (1972); Comment, The Purchaser-Seller Requirement of Rule 10b–5 Reevaluated, 44 U. Colo.L.Rev. 151, 154–59 (1972).

man v. Harvey, *supra*; Kahan v. Rosenstiel, *supra; cf.* O'Neill v. Maytag, 339 F.2d 764, 768 (2d Cir. 1964) ("There is, of course, no reason why the acts of an agent or corporate officer may not violate both his common law [fiduciary] duty and the duty imposed by Rule 10b–5."); J. D. Cox, Fraud is in the Eyes of the Beholder: Rule 10b–5's Application to the Act of Corporate Mismanagement, 47 N.Y.U.L.Rev. 675 (1972); 47 Notre Dame Lawyer 1349 (1972).[4]

The judicial struggle with the Birnbaum rule results perhaps from an effort systematically to afford the remedial procedural and substantive advantages of rule 10b–5 to worthy plaintiffs while at the same time avoiding an unsalutary federal absorption and expansion of state corporate law principles. At present the struggle appears to be pruning the three, interrelated limitations of the Birnbaum rule down to one, more modest requirement: Actions under rule 10b–5 must be founded in fraud touching a securities transaction and must exhibit a direct and causal relationship between that fraud and the claimed injury. *E.g.*, Heyman v. Heyman, 356 F.Supp. 958 (S.D.N.Y.1973); Tully v. Mott Supermarkets, Inc., 337 F.Supp. 834, 839–842 (D.N.J.1972); *see* Brief for S.E.C. as Amicus Curiae at 6, Vine v. Beneficial Finance Co., *supra*, quoted in Bromberg, Securities Law, supra, § 4.7(2) at 88, New Matter n. 73.2. This is the conclusion suggested by this circuit in Vincent v. Moench, *supra*. Noting the trend "away from strict application of the purchaser-seller rule," the court determined that "in a suit for equitable relief any person showing a 'causal connection' between the fraudulent sale of a security and injury to himself may invoke federal jurisdiction." *Id.* 473 F.2d at 434,

435 *citing* Crane Co. v. Westinghouse Air Brake Co., *supra*; Kahan v. Rosenstiel, *supra*; Tully v. Mott Supermarkets, Inc., *supra*.

The *Vincent* court dealt with a suit for equitable relief, but its pronouncement need not be limited to such suits. The purchaser-seller requirement was first disregarded where the plaintiff sought to enjoin a continuing fraud, in effect bringing suit in the position of the S.E.C. rather than as a purchaser or seller of securities. Mutual Shares Corp. v. Genesco, Inc., *supra*, 384 F.2d at 546–547. However, retrospective injunctive relief of interest principally to individual plaintiffs who are neither purchasers nor sellers appears to be that sought in Vincent and approved in Crane Co. v. Westinghouse Air Brake Co., *supra*, Kahan v. Rosenstiel, *supra*, and Tully v. Mott Supermarkets, Inc., *supra*. There is no reasoned basis for concluding that a plaintiff's stake in the outcome of a suit, i.e. his standing, depends upon whether retrospective injunctive relief rather than damages is necessary to cure his injury. Such a distinction is impractical and would soon be eroded. *See, e.g.*, Heyman v. Heyman, *supra*; Tully v. Mott Supermarkets, Inc., *supra*, 337 F.Supp. at 839–841, *citing*, Crane Co. v. Westinghouse Air Brake Co., *supra*, and Kahan v. Rosenstiel, *supra*. While suits in equity do not raise the conceptual difficulties of properly limiting damages claims, these difficulties may generally be reduced to those found customarily in tort and rule 10b–5 law by applying the *Vincent* court's causality requirement. They are better resolved through an application of the law of damages, as the *Vincent* court's causality approach suggests, rather than through the erection of standing barriers supposedly anchored in the statute itself but which are fre-

---

4. As the citations suggest, corporate mismanagement in connection with a securities transaction has on occasion prior to the *Bankers Life* decision, been held not cognizable under rule 10b–5 unless the corporation, i. e. its directors, were actu-

ally deceived in connection with the securities transaction. It is noteworthy in this regard that the bad loans complained of by plaintiffs allegedly were made without the customary approval of the directors.

quently elbowed aside.[5]  In the opinion of this court, the *Vincent* decision suggests that any person, not just one seeking equitable relief, who shows a causal connection between the fraudulent sale of a security and injury to himself may sue under rule 10b–5.

The *Vincent* court's application of the rule of causal connection to the pertinent facts pleaded in that case resulted in dismissal.  There the defendants allegedly made a fraudulent purchase of controlling stock in a corporation which in turn held controlling interest in a family partnership.  Once at the helm of the partnership, defendants purportedly undertook through mismanagement to plunder it.  Plaintiffs, who at the outset held a minority interest in the partnership and later sold out under pressure, claimed injury under rule 10b–5.  The court determined the defendants' mismanagement, not defendants' fraudulent purchase, to be the cause of plaintiffs' injury.  As a result of this separate analysis of the frauds perpetrated by defendants, no causal connection between the stock transaction and the plaintiffs' injury was found to exist.  The court contrasted these facts with those in Tully v. Mott Supermarkets, Inc., *supra,* where defendants' fraudulent purchase of controlling treasury stock was directly connected to plaintiffs' injury which was the loss of control itself.  Vincent v. Moench, *supra* 473 F.2d at 435; Tully v. Mott Supermarkets, Inc., *supra,* 337 F. Supp. at 838.

On the facts pleaded before this court, it is claimed that defendants fraudulently procured uncollectible loans from the bank.  Also, it is represented that these fraudulent transactions resulted directly in the collapse of the bank and injury to the plaintiffs [6] because the loss of the loaned money was sufficient without collateral mismanagement to impair the bank's capital.  Furthermore, the transactions whereby time certificates of deposit were exchanged for deposits of $1 million apparently purportedly played an influential role in the granting of the bad loans and alleged associated fraud.  Under the *Bankers Life* standard, the alleged fraudulent granting of the loans and associated mismanagement are connected with or "touch" the deposit transactions.  Superintendent of Insurance v. Bankers Life and Casualty Co., *supra* 404 U.S. at 12–13, 92 S.Ct. 165; The Supreme Court, 1971 Term, 86 Harv.L.Rev. 52,264 (1972).  There is, therefore, an unbroken causal chain "linking together" defendants' alleged fraud, plaintiffs' loss and the deposit transactions as well as the loan transactions themselves.  Tully v. Mott Supermarkets, Inc., *supra,* 337 F.Supp. at 842, *quoted in* Vincent v. Moench, *supra* 473 F.2d at 435.

In the opinion of the court, under plaintiffs' claim both the deposit transactions and the loan transactions would be purchases or sales of securities within the meaning of section 3(a)(10) of the Securities Exchange Act of 1934,

5.  *See* articles cited in note 3, *supra.*

6.  Defendants claim as a matter of law that a shareholder who does not sue derivatively cannot successfully assert a direct, causal connection between his loss and the corporation's securities transaction.  This claim is nothing more than a restatement of the traditional Birnbaum rule and does not engage the present issues.  In any event, shareholders who do not sue derivatively have been found to suffer direct and cognizable injury as a result of their corporation's securities transactions despite the traditional rule.  *E. g.,* Crane Co. v. Westing-

house Air Brake Co., 419 F.2d 787, 797–798 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); Vine v. Beneficial Finance Co., 374 F.2d 627, 635 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L. Ed.2d 460 (1967); Tully v. Mott Supermarkets, Inc., 337 F.Supp. 834, 839–842 (D.N.J.1972); J. D. Cox, Fraud is in the Eyes of the Beholder: Rule 10b–5's Application to the Act of Corporate Mismanagement, 47 N.Y.U.L.Rev. 675 (1972) ; *see also* note 3, *supra*; *but cf.* Knauff v. Utah Construction and Mining Co., 408 F.2d 958, 961 (10th Cir. 1969).

15 U.S.C. § 78c(a)(10),[7] section 10(b) of that act and rule 10b–5. *As to certificates of deposit, see:* Tcherepnin v. Knight, 389 U.S. 332, 344, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); Bromberg, Securities Law, *supra,* § 4.6(312), (373). *But see* S.E.C. v. Fifth Avenue Coach Lines, Inc., 289 F.Supp. 3, 38 (S.D.N.Y. 1968) (dictum), aff'd 435 F.2d 510 (2d Cir. 1970), *questioned in* Zeller v. Bogue Electric Manufacturing Corp., *supra* at 93,621 ("The district court opinion contains dicta with which we would not agree, see 289 F.Supp. 3, 38 [S.D.N.Y. 1968]". *As to short term promissory notes, see:* Zeller v. Bogue Electric Manufacturing Corp., *supra;* Sanders v. John Nuveen & Co., 463 F.2d 1075 (7th Cir.), cert. denied, 409 U.S. 1009, 93 S. Ct. 443, 34 L.Ed.2d 302 (1972); Bromberg, Securities Law, *supra,* § 4.6 (371). *But see* S.E.C. v. Fifth Avenue Coach Lines, Inc., *supra,* 289 F.Supp. at 38 (dictum), *questioned in* Zeller v. Bogue Electric Manufacturing Corp., *supra* at 93,621; L. Loss, 1 Securities Regulation 546 (1969).[8],[9]

As a result, plaintiffs have standing to bring this action under section 10(b) of the Securities Exchange Act of 1934 and rule 10b–5.

Defendants apparently contend that, even conceding plaintiffs' standing under rule 10b–5, they must join with the bank's receiver in a derivative suit in order to properly present their claims. Defendants note that the bank's receiver alone is authorized under the bankruptcy laws to collect all claims belonging to the bank and that the comptroller of currency is to distribute the collected money among the bank's creditors. However, as the earlier discussion should illustrate amply, plaintiffs' claims against the defendants under rule 10b–5 are their own and not the bank's (which through its receiver might, of course, assert its own claims of securities fraud as in Superintendent of Insurance v. Bankers Life & Casualty Co., *supra*). Indeed, the conclusion that the plaintiffs assert their own claims under the securities law follows necessarily from the court's earlier determination that plaintiffs have standing under rule 10b–5. Furthermore, since the plaintiffs are not creditors of the bank asserting their claims against the bank, they are not proper participants in any recovery made by the bank's receiver. And, since the defendants are not bankrupt, any separate recovery by the plaintiffs need in no way reduce the recovery available to the receiver. In any event, the vehicle of derivative suit is of questionable utility to shareholders of a bankrupt institution. Derivative suits almost never result in any money for the shareholders

7. (10) The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferrable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

8. Apparently some of the promissory notes involved had a maturity period exceeding nine months, thus lifting them from the exclusionary wording of 15 U. S.C. § 78c(a)(10) discussed in the cases cited.

9. Should the promissory notes not qualify as securities under rule 10b–5, they would nevertheless qualify in a similar action brought under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), pursuant to that statute's definition of "security," 15 U.S.C. § 77b (1). Zeller v. Bogue Electric Manufacturing Corp., [Current] 476 F.2d 795 (2d Cir. 1973); Sanders v. John Nuveen & Co., 463 F.2d 1075, 1078 (7th Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

except through the increase in the value of their shares resulting from the corporation's recovery. Bromberg, Securities Law, *supra,* § 11.7. However, the shares of a bankrupt corporation will seldom increase in value regardless of the success of the suit and any money recovered in relief of the damage suffered by the bankrupt corporation as a result of the securities fraud will be subscribed to by its creditors. Even if the plaintiff shareholders could receive some money recovery as a result of a derivative suit, it would not equal the loss in value of their shares whose value originally included the going concern and good will value of the corporation. This loss in the value of the outstanding shares is not comfortably thought of as a loss to the corporation; it is not a loss recoverable by or in behalf of the corporation under rule 10b–5. The loss in the value of plaintiffs' shares is properly recovered, if at all, by suit in their own behalf.[10] *Cf.* Vine v. Beneficial Finance Co., *supra* (Shareholders brought suit both as a class and derivatively claiming that the defendants' securities fraud damaged the plaintiffs' corporation as well as the plaintiffs individually as shareholders of the corporation. The court concluded that the derivative claim was pointless since the plaintiffs' corporation was no longer functioning—having merged into the defendant—and talk of benefiting the corporation was therefore senseless. However, the court suggested that the class action brought to redress shareholder damages should be allowed if the trial court determined the usual class action prerequisites to be present.); Swanson v. American Consumer Industries, Inc., 415 F.2d 1326 (7th Cir. 1969) (Shareholders may sue derivatively where they claim that their now dissolved corporation suffered injury when its assets were fraudulently purchased. The

shareholders may also sue in their own behalf as a class where they claim the fraudulent purchase of assets resulted in an unfavorable stock exchange ratio and a dilution of the shareholders' equity interests.).

The court has also considered the claims of plaintiffs under section 17 of the Investment Company Act of 1940, 15 U.S.C. § 80a–17, and section 206(4) of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–6(4). They appear sufficient to withstand the present motion to dismiss.

Plaintiffs moved February 12, 1973, to amend their complaint to describe more clearly defendants' $1 million deposit in the bank as involving fraudulent securities transactions. The motion should be granted.

Pursuant to Fed.R.Civ.P. 23, plaintiffs seek to maintain this action as a class action. Accordingly, a hearing shall be set to determine whether the requirements of the rule are met.

---

10. *Cf.* note 3, *infra.*
   The form of suit, i. e. class action, chosen by the plaintiff shareholder is not uncommon. *E. g.,* Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir. 1972); Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).