See also, D.C., 293 F.Supp. 1092.

Max **HORWITZ** and L. J. Horwitz, Appellant,

v.

**PANHANDLE EASTERN PIPE LINE COMPANY**, a corporation, Appellee,

and

**NATURAL GAS & OIL PRODUCING COMPANY, Inc.**, Additional Party-Appellant.

No. 30–70.

United States Court of Appeals, Tenth Circuit.

March 1, 1971.

Calvin W. Hendrickson and Hugh A. Baysinger of Pierce, Duncan, Couch & Hendrickson, Oklahoma City, Okl., for appellants.

**54**

Coleman Hayes, Oklahoma City, Okl. and Wendell J. Doggett, Houston, Tex., for appellee.

Before LEWIS, Chief Judge, McWILLIAMS, Circuit Judge, and BRATTON, District Judge.

BRATTON, District Judge.

This is an appeal from a directed verdict against appellants Max Horwitz and L. J. Horwitz upon their action against Panhandle Eastern Pipe Line Company, Incorporated, for alleged common law fraud and violations of 15 U.S.C.A. §§ 77q, 78j, and 17 C.F.R. § 240.10(b) (5) of the federal securities laws. Also involved in this appeal is the judgment in favor of Panhandle and against the Horwitz' and additional party appellant Natural Gas & Oil Producing Company upon Panhandle's counterclaim for $150,000.00 on a note executed by Natural and guaranteed by the two Horwitz'.

The appellants are men with many years experience in the field of oil and gas. Through their partnership entity Western Oil and Gas, they controlled a 34,000 acre block of leases in Alfalfa County, Oklahoma. By 1958 they had drilled on the block six wells and had tested them by electric logs.

In that year they entered into negotiations with Panhandle for development of the block, culminating in the fall of that year in three farm-out option agreements covering the block. Under one of the option contracts, Panhandle was to drill and test a well at each of three 80 acre drill sites. While testing the existing wells in 1958, Panhandle's engineering people had prepared a preliminary engineering report which indicated that there was a potential of large oil and gas reserves on the block. In September of 1959, however, Panhandle concluded the wells were not promising and let expire the option contracts, purchasing only the three drill sites. Two of the wells were plugged, and the third was ultimately merely a marginal producer.

In the fall of 1959, following expiration of the option contracts, the appellants began negotiations with Panhandle to buy the latter's interest in the drillsite leases and the three wells.

During the course of these negotiations, appellants were told by one Panhandle employee that the three wells were "good wells" or a "good deal," and, at their insistence, were also given a copy of the 1958 preliminary engineering report. They also came into possession of favorable test information on two of the wells as reported by a scout ticket reporting service.

The negotiations culminated in a purchase agreement whereby appellants would buy from Panhandle the three wells for a sum substantially less than the monies Panhandle had expended to drill the wells. Also entered into was a gas purchase and sales agreement under which Panhandle would buy the gas produced from the block by appellants through their corporation, Lumax Transmission, Incorporated.

Between 1960 and 1964 the appellants attempted to develop the block by organizing first a company called Alfco Development and, subsequently, a company called Natural Gas and Oil Producing Company, Incorporated. In exchange for stock in Natural, the appellants turned over to it their interest in the block. By the sale of Natural stock, it was intended to pay Panhandle for the leasehold interests purchased from it, and the prospectus of each company so indicated.

During their attempts to get Natural under way, one of the appellants visited the office of one of Panhandle's New York public relations men who had a copy of the preliminary report of 1959 which they claim he confirmed as reliable.

This same man also had on display in his office a map of the area showing a proposed pipeline to handle what were shown thereon to be gas reserves that would be produced from the block, and he showed the map to the underwriters of the Natural offering.

Throughout this period, appellants had the research of another petroleum

engineer and a report dealing with a portion of the block prepared by another engineering firm. This information was used in their efforts to get S.E.C. approval and in the preparation of each prospectus. Panhandle was also requested by the S.E.C. to submit information on the three wells and apparently supplied at least partial information.

The attempt to raise capital for the development of the block by the sale of Natural stock ultimately failed, but, in the meantime, Panhandle brought suit in 1964 for specific performance of the three well contract. The suit was settled by the execution of the note by Natural that was guaranteed by appellants.

The appellants subsequently determined the three wells were not good and filed the present action, initially alleging the violations of the federal securities laws set forth above. Although it was not plead by them, the court allowed appellants to point out those acts which they claimed also established common law fraud.

The thrust of their case alleging a violation of federal securities laws was that Panhandle had induced them to purchase the three wells by delivering to them an engineering report it knew to be false and unreliable at the time of delivery. Their common law fraud case included not only this, but also, the release through the scout tickets of only that test information which was favorable while results considered in condemning the wells were concealed, and the representation that the wells were good wells. Thereafter, they claimed, Panhandle encouraged and assisted them in their attempts to raise money to develop the block with the knowledge that the registration statement and prospectus of, first, Alfco, and then Natural stated that part of the money raised from stock offerings would be used to pay the purchase price of the three wells. Panhandle's conduct included not only the submission of information to the S.E.C. but also the claimed conduct of the New York representative with regard to the engineering report and in

displaying the map of the area in his office.

In ruling against appellants on that count which alleged that the delivery of the engineering report violated federal securities laws, the court below found that the delivery to them in 1959 of a preliminary engineering report was not a fraud in connection with their 1963 purchase from their own company of securities, the evidence having disclosed that Panhandle had no ownership in or connection with the company formed by appellants to develop the block nor with their exchange of their leaseholds with Natural in return for stock. Relying on Jensen v. Voyles, 393 F.2d 131 (10th Cir. 1968), and upon Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. den. 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), and Howard v. Levine, 262 F.Supp. 643 (S.D.N.Y. 1965), the court concluded that appellants had failed to establish the requisite connection between the alleged fraud, i. e., the delivery in 1959 of the engineering report, and the purchase of a security, i.e., their exchange with their own company of leases for stock.

The appellants claim that Panhandle's conduct, as set forth above, indicates a continuous course of conduct and a direct relationship with them which was not considered by the trial court in holding that the anti-fraud provisions of the federal securities laws did not apply. They contend that Panhandle's conduct falls within the purview of Rule 10(b) (5) under the test set forth in S.E.C. v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968), cert. den. Coates v. S.E. C., 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed. 2d 756 (1968), extending liability to *anyone* who is responsible for false or misleading statements or omissions which affect the purchase or sale of securities.

We disagree. A review of the totality of the evidence presented below is persuasive that the trial court's conclusion is correct, and the appellants have not established a cause of action

under 15 U.S.C. 77q, 78j, and 17 C.F.R. § 240.10(b) (5).

■ With regard to appellants' contention that the trial court, in finding there was no common law fraud, ignored their evidence as a whole, it should be noted that appellants did not plead such a cause of action, and, when invited by the court at the close of their case to advise the court of the alleged acts of fraud by defendant upon which they were relying, listed the very items which they now complain were isolated examples singled out by the court to support its conclusion that there was no fraud.

The allegedly fraudulent conduct of which the court was advised was, as indicated above, the delivery of the engineering report; statements that the wells were good wells; a statement confirming the report, together with the display of a map; and the scout ticket information. The trial judge found that appellants had failed to establish the necessary material statement of fact required under Oklahoma law. Ramsey v. Fowler, 308 P.2d 654 (Okl.1957); Miller v. Long, 202 Okl. 34, 210 P.2d 147 (1949). He concluded that the words "good wells" or "good deal," as well as any statement to third parties confirming the preliminary report and displaying to them a map of a proposed pipeline could be viewed only as expressions of opinion, and that these, together with a report replete with such language as "preliminary," "potential," "possible," and "estimated" reserves, could not rise above the level of opinion to become statements of fact upon which reliance by the appellants as purchasers would be justified. Gibson v. Mendenhall, 203 Okl. 558, 224 P.2d 251 (1950); Myers v. Chamness, 114 Okl. 220, 245 P. 879 (1926). Further, he found that the scout tickets were not shown to have been given to appellants by Panhandle nor that the information contained thereon was known to be false, if indeed it was false, when published, and that no statement confirming the report was shown to have been made by Panhandle's New York representative.

Appellants' protestations to the contrary notwithstanding, the evidence in toto does not show that Panhandle perpetrated a fraud upon them, and the court below correctly determined that no material statement of fact was made to them.

■ The same alleged fraud was asserted by appellants as their defense to Panhandle's counterclaim. They failed to establish it, and the judgment against them on the note was proper.

Affirmed.