**Ruth F. Howells VINCENT et al., Plaintiffs-Appellants,**

v.

**Lorin L. MOENCH et al., Defendants-Appellees.**

**No. 72-1184.**

United States Court of Appeals, Tenth Circuit.

Jan. 26, 1973.

Rehearing Denied March 23, 1973.

---

Daniel L. Berman, Salt Lake City, Utah (Mary Lou Godbe, Salt Lake City, Utah, on the brief), for appellants.

C. Keith Rooker, Salt Lake City, Utah (Dale A. Kimball, Salt Lake City, Utah, on the brief), for appellees.

Before MURRAH, BREITENSTEIN and McWILLIAMS, Circuit Judges.

MURRAH, Circuit Judge.

This litigation centers around another internecine struggle over a valuable family estate. Ruth F. Howells Vincent and the other plaintiffs, individually and

derivatively on behalf of defendant Howells Livestock, Inc., seek private equitable relief under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and its implementing Rule 10b–5, 17 C.F.R. § 240.10b–5 (1964) for injuries caused by defendants' alleged scheme to defraud plaintiffs in connection with the purchase and sale of interests in certain family businesses. Section 10(b) and Rule 10b–5 provide in presently material part that it shall be unlawful for any person to use any instrumentality of interstate commerce to employ any scheme or device which would operate as a fraud or deceit upon any person "in connection with the purchase or sale of any security." Jurisdiction is asserted under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, providing for the bringing of suits in equity or at law in federal court for enforcement of any liability or duty created by the Act or the rules and regulations promulgated thereunder.

The basic and operative facts are these. Howells Livestock, Inc. is a Utah corporation owning approximately 40,000 acres of ranch land and additional related grazing and forest permits, which it leases to livestock operators. David P. Howells founded the company more than 50 years ago, and upon his death in 1952 left its ownership in equal shares to his three children, Paul S. Howells, Barbara Howells Moench, and Francis Howells West. The children and their spouses subsequently formed a partnership which they called Thousand Peaks Livestock Company, to operate a livestock business on lands owned or controlled by Howells Livestock, Inc. Under this arrangement each family owned a one-fourth interest in the operating partnership, with the parent corporation, Howells Livestock, Inc., owning the remaining one-fourth. In 1959 the Paul S. Howells family and the Moench family purchased the West family's one-fourth share of the operating partnership, and enough of the parent corporation's share in the partnership to leave it only a 2%, but vital, interest.

At the time of Paul S. Howells' death in an airplane accident in 1961, then, the operating partnership was owned 49% by the Paul S. Howells family, 49% by the Moench family, and 2% by the parent corporation. At this juncture it is important to keep in mind that the parent corporation was owned one-third by the Paul S. Howells family, one-third by the Moench family and one-third by the West family, and whoever gained control of the parent corporation also controlled its key 2% interest in the operating partnership.

The plaintiff Ruth F. Howells Vincent, recently remarried, is the widow of Paul S. Howells, the remaining individual plaintiffs are Paul S. Howells' children, and Zions First National Bank is trustee of a trust created by Paul S. Howells' last will and testament. Defendant Barbara Howells Moench was the sister of Paul S. Howells and is married to defendant Lorin L. Moench, who since 1961 has been the senior male relative of the individual plaintiffs and the dominant influence in both the operating partnership and the parent corporation.

Following Paul S. Howells' death, Lorin L. Moench purchased the West family's one-third interest in the parent corporation, thereby obtaining control of that company and its controlling 2% share of the operating partnership. Shortly thereafter, Moench also purchased the Paul S. Howells family's 49% interest in the operating partnership, thereby assuming undisputed ascendency over both enterprises. The complaint alleges that Moench used instrumentalities of interstate commerce to implement a scheme to defraud the plaintiffs in connection with the latter transactions. The contention is that Moench's purchase of parent company stock from the West family, who are not parties to this action, was part of a plan to "loot and plunder" that company, and that the consequence of Moench's scheme has been to deprive plaintiffs of the benefits of the ownership of their one-third of the stock of the parent company. It is further alleged that Moench subsequent-

ly used this newly acquired control of the parent company, and the attendant 2% controlling share of the operating partnership, to coerce Ruth Howells Vincent to sell him her family's 49% interest in the partnership. The plaintiffs joined additional pendant state claims alleging breaches of corporate fiduciary duties by the defendants.

Relying on Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the trial court granted Moench's motion to dismiss on the ground that the plaintiffs were not buyers or sellers of a security within the meaning of Section 10(b) of the Securities Exchange Act or Rule 10b–5, and that the court was, therefore, without subject matter jurisdiction. On appeal the plaintiffs insist that Superintendent of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), heralded the complete demise of the former caselaw requirement that to invoke the protection of the Act in a case of this kind the plaintiffs must be buyers or sellers of a security, and further allege that, in any event, the plaintiffs' sale of their 49% interest in the operating partnership to Moench was the sale of a security within the meaning of the Act. In this posture of the case all facts well pleaded must be taken as true, both in the trial court and on appeal. For reasons we shall more fully state, we affirm the trial court's decision.

The Securities Exchange Act was enacted following the excesses of the late 1920's for the protection of the public against "predatory operations" of corporate insiders. *See, e.g.,* S.Rep. No. 1455, 73d Cong., 2d Sess. 68 (1934). The salient purpose of the Act is ". . . to give the investing public the opportunity to make knowing and intelligent decisions [in] the purchase or sale of securities." *See* Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970). *See also, e.g.,* S.E. C. v. Capital Gains Bureau, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237

(1963). To that end "§ 10(b) bans the use of any deceptive device in the 'sale' of any security by 'any person,'" regulated or unregulated, "whether conducted in the organized markets or face to face." Superintendent of Insurance v. Bankers Life & Cas. Co., *supra,* 404 U.S. at 10 and 12, 92 S.Ct. at 168 and 169. And it provides a private right of action, as well as enhancing the SEC's enforcement powers. *See, e.g., Bankers Life, supra* at 13 n. 9, 92 S.Ct. 165. However, *Birnbaum* admittedly limited the scope of the Act's protection to defrauded buyers and sellers of securities. In that case the complaint alleged that the defendant had sold his controlling block of shares to another corporation, which had paid the defendant a premium so it could use control for purposes detrimental to the plaintiffs, minority shareholders in the sold corporation. Under facts not demonstrably unlike ours, the Court of Appeals expressly stated that while Rule 10b–5 "may have been somewhat loosely drawn," it "extended protection only to the defrauded purchaser or seller." 193 F.2d at 463–464. We have inferentially approved *Birnbaum* under facts clearly distinguishable from our case. *See, e.g.,* Horwitz v. Panhandle Eastern Pipe Line Co., 438 F.2d 53 (10th Cir. 1971); and Knauff v. Utah Construction & Mining Co., 408 F.2d 958 (10th Cir. 1969). Following another Second Circuit case, however, we did recognize that the words "purchase or sale must be defined broadly" (*see* Knauff v. Utah Construction & Mining Co., *supra* at 961) and that they include an exchange of shares (*see Knauff, supra,* and Vine v. Beneficial Finance Company, 374 F.2d 627 (2d Cir. 1967)).

Indeed, in their brief defendants recognize a relaxation of the *Birnbaum* requirements since it was decided in 1952. In *Vine* the parties assumed the vitality of *Birnbaum,* but, specifically leaving open the question in our case, the Second Circuit liberally construed "purchase or sale" to hold that minority shareholders, who had not bought or

sold securities but were faced with an unwanted merger, were forced sellers and were, therefore, entitled to maintain an action under the Act. In another case by the same court a few months later, Mutual Shares Corporation v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967), a claim for injunctive relief alleging that defendants manipulated the market value of stock by keeping dividend payments at a minimum in order to force minority shareholders to sell at depressed prices, was held actionable under Rule 10b–5, while a claim for damages was dismissed. The only "sale" in connection with the alleged fraud in that case was the purchase by defendants of stock from persons not parties to the suit. Without referring to *Birnbaum*, the court did "not regard the fact the plaintiffs have not sold their stock as controlling on the claim for injunctive relief." And *see also* Kahan v. Rosenstiel, *supra*. In Iroquois Industries, Inc. v. Syracuse, 417 F.2d 963 (2d Cir. 1969), however, the Second Circuit specifically reaffirmed the continuing vitality of *Birnbaum*.

Although *Birnbaum* has been both questioned [1] and supported,[2] the recent trend is undoubtedly toward the more liberal view. In *Bankers Life* the Court of Appeals had affirmed dismissal of a Section 10(b) complaint on grounds the plaintiff was not a buyer or seller of securities within the meaning of the Act. The Supreme Court, however, reversed, taking the view that the Court of Appeals had read the Act too narrowly; "[s]ince there was a 'sale' of a security and since fraud was used 'in connection with' it, there is redress under § 10(b), whatever might be available as a remedy under state law." 404 U.S. at 12, 92 S. Ct. at 169.

The plaintiffs take comfort from the quoted language as an indication that a fraudulent "sale" of a security is the only requirement for Section 10(b) jurisdiction. Taken out of context, this language may favor standing in a case such as ours, where the plaintiffs are neither parties nor privy to the sale. The question in that case, however, was whether a creditor of a corporation, suing derivatively on behalf of the corporation, could invoke the protection of Section 10(b) for misappropriations by corporate insiders of funds received from the sale of the corporation's securities—a far different situation than we have here. In that case the corporation, on whose behalf the suit was brought, was unquestionably "the seller of Treasury Bonds" (404 U.S. at 9, 92 S.Ct. 165), and "suffered an injury as a result of deceptive practices touching its sale of securities" (404 U.S. at 12–13, 92 S. Ct. at 169). Justice Douglas, speaking for the unanimous court in *Bankers Life*, went on to emphasize that, while Section 10(b) does not affect transactions constituting only internal corporate management, it "must be read flexibly, not technically and restrictively." (404 U.S. at 12, 92 S.Ct. at 169.) *Bankers Life* must, therefore, be read as a mandate for a broad interpretation of Section 10(b). And while it does not expressly overrule *Birnbaum*, it generally reinforces the trend in federal courts away from a strict application of the purchaser-seller rule.

From our point of view, and with the benefit of this trend, we think Section 10(b)'s language outlawing de-

1. *See, e. g.,* Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970) ; Tully v. Mott Supermarkets, Inc., 337 F.Supp. 834 (D.N.J. 1972) ; Stacey v. United States, 270 F. Supp. 71 (E.D.La.1967) ; Breffort v. I HAD A BALL COMPANY, 271 F. Supp. 623 (S.D.N.Y.1967) ; Greenstein v. Paul, 275 F.Supp. 604 (S.D.N.Y.1967) ; Condon v. Richardson, 275 F.Supp. 943 (S.D.Ill.1967).

2. *See, e. g.,* Kremer v. Selheimer, 215 F. Supp. 549 (E.D.Pa.1963) ; Hirsh v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 311 F.Supp. 1283 (S.D.N.Y.1970). Some support for *Birnbaum* has been limited to actions for damages (*see, e, g.,* Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968).

ception or manipulation "in connection with the purchase or sale of any security" must be construed as meaning that in a suit for equitable relief any person showing a "causal connection" between the fraudulent sale of a security and injury to himself may invoke federal jurisdiction. *See, e.g.,* Crane Company v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969); Kahan v. Rosenstiel, *supra*; and Tully v. Mott Supermarkets, Inc., 337 F.Supp. 834 (D.N.J.1972).

■ In all the cases we have seen where the "causal connection" theory has been embraced and applied, the fraudulent sale has been directly, hence causally associated with the injury to the plaintiffs. The most that can be said for our case is that the sale was in furtherance of a preconceived, but as yet uneffectuated scheme to defraud. Thus, in *Tully,* insiders on the Board of Directors secretly and fraudulently conspired to vote to sell themselves the corporation's treasury stock, giving themselves control to the injury of the outsider plaintiffs, who claimed they should have had a right to purchase the stock. As the court said, there was an unbroken chain ". . . linking together defendants' alleged fraud, the stock transaction and plaintiffs' loss." In that case, as in ours, the defendants were the purchasers of securities. But, unlike our case, it was the actual purchase of the stock which worked the fraud and caused the plaintiffs' injury.

Under the well-pleaded facts, Moench devised a scheme to defraud the plaintiffs. In furtherance of the scheme, he deceptively purchased securities from a third party. The plaintiffs were not a party or privy to this transaction, but they claim to have been injured as a result of the effectuation of the scheme. In the final analysis, we have a scheme, a sale, and an injury, but this does not necessarily spell jurisdiction. The question is whether there is a causal connection between the deceptive sale and the injury to the plaintiffs. Although the deceptive purchase was, to be sure, a link in the chain of causation, the plaintiffs' injury was the direct result of corporate mismanagement, not of the deceptive purchase. There was, therefore, no requisite causal connection between the deceptive purchase and the plaintiffs' injury. The trial court correctly dismissed the complaint as to Moench's purchase of stock from the West family.

This brings us to the final question whether the interest in the operating partnership which Moench actually purchased from plaintiffs can be said to be a security within the meaning of Section 10(b), as that term is defined in Section 3(a)(10) of the Securities Exchange Act, 15 U.S.C. § 78c(a)(10). In their verified complaint the plaintiffs contend that the interest in the operating partnership which they sold to defendants constituted a security within the meaning of the Act, and they allege deception by defendants in connection with that sale.

■ The definition of a security in Section 3(a)(10) is broad and comprehensive, and is intended to embrace a wide variety of investment interests. Generally speaking, it means any transaction or scheme in which a person ". . . invests his money in a common enterprise and is led to expect profits solely from the efforts of . . . a third party . . .," it being unimportant whether the interest bought or sold is represented by formal certificates or by undivided interests in the physical assets of the business. *See* S.E.C. v. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Whether a particular investment constitutes a security depends upon the facts and circumstances of the case. *See, e.g.,* S.E.C. v. Joiner Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943), and S.E.C. v. Howey Co., *supra.* Substance is exalted over form and emphasis is placed on economic reality. *See e.g.,* Continental Marketing Corp. v. Securities & Exchange Com'n., 387 F.2d 466, 470 (10th Cir. 1967).

It is uncontested that prior to the death of Paul S. Howells the operating

business was treated as a partnership by all parties concerned, and that the death of Paul S. Howells dissolved the partnership. But Moench continued to operate the business as a common enterprise, and the actual nature of the plaintiffs' relationship to the enterprise and to Moench becomes important to the ultimate question whether the interest sold was a security. If the resulting relationship was a continuing common enterprise in which the plaintiffs had no control or right of control, and their expectation of profits was dependent solely upon the management efforts of Moench, then the interest sold or purchased was a security within the contemplation of Section 10(b). This is the theory on which the plaintiffs' case is made to rest. But the trial court did not agree with this characterization, and it is important to note that much of the caselaw from which this theory is derived involves schemes of one kind or another in which a promoter sells undivided interests in a common enterprise to the public generally, retaining sole management and control of the affairs of the enterprise. *See, e.g.,* S.E.C. v. Joiner Corp., *supra*; S.E.C. v. Howey Co., *supra*; Continental Marketing Corp. v. Securities & Exchange Com'n., *supra*; Gilbert v. Nixon, 429 F.2d 348 (10th Cir. 1970); and Woodward v. Wright, 266 F.2d 108 (10th Cir. 1959).

■ As the trial court saw it, this situation was simply a family partnership, in a state of dissolution as a result of the death of one of the partners. During the period of dissolution, one partner sold her family's interest to another family partner, and the interest sold was not a security within the meaning of Section 10(b). We agree with the trial court that it would not be compatible with economic realities to say that in these circumstances the interest sold or purchased was a security within the meaning of the Act. We do not think that federal jurisdiction under Section 10(b) can or should be extended to encompass situations of this kind.

The judgment is affirmed.