562 F.2d 645
 Fed. Sec. L. Rep. P 96,191
McGOVERN PLAZA JOINT VENTURE and Hugh J. McGovern,
Plaintiffs-Appellants,
v.
FIRST OF DENVER MORTGAGE INVESTORS, an unincorporated
association, B. F. Saul Real Estate Investment Trust, B. F.
Saul Advisory Company, First National Advisors, Inc., John
K. McCready, Clarence Liller, Jr., Richard Roe, Bernard
Black and Allan Able (being fictitious names of the trustees
of First of Denver Mortgage Investors), Mathew Miller, John
Doe and William Smith (being the fictitious names of the
trustees of B. F. Saul Real Estate Investment Trust),
Defendants-Appellees.
 No. 76-1327.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted May 16, 1977.
Decided Oct. 4, 1977.
 
 Jerald M. Schuman, Tulsa, Okl. (David W. Jackson of Schuman, Milsten & Jackson, Tulsa, Okl., and Thomas S. Smith, of Hopper & Kanouff, Denver, Colo., on the brief), for plaintiffs-appellants.
 Leslie A. Nicholson, Jr., Washington, D. C. (James J. Sullivan, Shaw, Pittman, Potts & Trowbridge, Washington, D. C., and Martin S. Shore and Christian C. Onsager, Hellerstein, Hellerstein & Shore, Denver, Colo., on the brief), for B. F. Saul Advisory Co. and B. F. Saul Real Estate Investment Trust, defendants-appellees.
 Kirk P. Brady, Denver, Colo. (Raymond B. Danks of Hughes & Dorsey, Denver, Colo., on the brief), for First of Denver Mortgage Investors, First Nat. Advisors, Inc., John K. McCready and Clarence Liller, Jr., defendants-appellees.
 Before SETH, PICKETT and McWILLIAMS, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 The issue here is whether either a construction loan commitment, or a permanent loan commitment, purchased by a real estate developer in the normal course of business from a bona fide lender, is a "security" within the meaning of the Securities Act of 1933 or the Securities Exchange Act of 1934. The trial court held that neither was a "security" within the meaning of those acts. We agree.
 
 
 2
 The plaintiffs brought the present action against First of Denver Mortgage Investors and B. F. Saul Advisory Company, alleging that the first named company in making a construction loan commitment, and the latter named company in making a permanent loan commitment, had violated the Securities Act of 1933, 15 U.S.C. § 77l (2) and 15 U.S.C. § 77q(a), and the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 17 C.F.R. 240.10b-5. Saul filed a motion to dismiss on the ground that the permanent loan commitment which it issued the plaintiffs was not a "security" within the meaning of the federal securities acts. The trial court ruled that the granting of loan commitments by both Saul and First of Denver represented a commercial, not an investment, transaction, and that such commitments were not within the definition of a security under the 1933 and 1934 acts.
 
 
 3
 From the complaint we learn that the plaintiffs proposed to build a hotel in El Paso, Texas. The First of Denver issued the plaintiffs a commitment for a construction loan, for which the plaintiffs paid $15,000. By such commitment, First of Denver represented that it was ready, willing and able to provide construction financing upon satisfaction by the plaintiffs of certain conditions. One condition was that the plaintiffs secure a permanent loan commitment. Thereafter, according to the complaint, the plaintiffs secured a permanent loan commitment from Saul in the amount of $16,000,000, for which they paid a fee of $240,000. Attached to the complaint, as exhibits, were copies of the construction loan commitment, as well as the permanent loan commitment. The plaintiffs further allege that its purchase of these two loan commitments was the result of misrepresentation of material facts by the several defendants. Neither of the loan commitments was carried out, and the hotel was not built. Suit was then brought by the plaintiffs under the antifraud provisions of the securities acts for damages.
 
 
 4
 As indicated, the question posed by this appeal is whether either the construction loan commitment made by First of Denver, or the permanent loan commitment made by Saul, is a "security" within the meaning of the Securities Act of 1933 or the Securities Exchange Act of 1934. The word "security" is defined at 15 U.S.C. § 77b(1), and at 15 U.S.C. § 78c(a)(10). The phrase "loan commitment" is not mentioned in either of these statutory definitions. However, as this Court stated in Vincent v. Moench, 473 F.2d 430 (10th Cir. 1973):
 
 
 5
 The definition of a security in Section 3(a)(10) is broad and comprehensive, and is intended to embrace a wide variety of investment interests. Generally speaking, it means any transaction or scheme in which a person ". . . invests his money in a common enterprise and is led to expect profits solely from the efforts of . . . a third party . . . ," it being unimportant whether the interest bought or sold is represented by formal certificates or by undivided interests in the physical assets of the business. See S. E. C. v. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Whether a particular investment constitutes a security depends upon the facts and circumstances of the case. See, e. g., S. E. C. v. Joiner Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943), and S. E. C. v. Howey Co., supra. Substance is exalted over form and emphasis is placed on economic reality. See e. g., Continental Marketing Corp. v. Securities & Exchange Com'n, 387 F.2d 466, 470 (10th Cir. 1967).
 
 
 6
 The leading case on the question of what constitutes a security is S. E. C. v. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). There the owner of citrus acreage offered for sale, and sold, units of the grove, which sales were coupled with a contract whereby the owner continued to cultivate the unit thus sold, marketed the crop, and then remitted net proceeds to the purchaser of the unit. At issue in Howey was whether this was simply an ordinary sale of real estate coupled with an agreement by the seller to manage the property for the buyer, or, on the contrary, was an "investment contract." The term "investment contract" is specifically mentioned in both 15 U.S.C. § 77b(1) and 78c(a)(10). The Supreme Court in Howey defined that term as follows:
 
 
 7
 . . . In other words, an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.
 
 
 8
 Applying the foregoing test to the facts of Howey, the Supreme Court found that all of the elements of a profit-seeking business venture were present. The buyers (the investors) of the units provided the capital and in return shared in the profits, and the sellers (the promoters) managed and operated the enterprise. Such arrangement was held to constitute an "investment contract," regardless of the legal terminology in which the relationship was described.
 
 
 9
 In Zabriskie v. Lewis, 507 F.2d 546 (10th Cir. 1974), this Court was faced with the problem of whether a particular note was or was not a security. Resolution thereof depended on whether the transaction was purely commercial in nature or was in reality an investment. If the former, then the note was not a security. In determining the exact nature of the note, we stated that one test for determining whether a given note was a "commercial" note or an "investment" note is whether "the transaction is of a kind in which stock often is actually given." The facts of Zabriskie were that Zabriskie, who had money he was seeking to invest, through the efforts of a real estate broker, made a loan of $15,000 to a third party who used the proceeds from the loan to promote a particular business venture. In return for his $15,000, Zabriskie received a note for $17,500. In that factual situation, we held the note given Zabriskie was an investment note, and, as such, was within the ambit of the federal securities acts.
 
 
 10
 In the light of such cases as Howey and Zabriskie, we fail to see how either the construction loan commitment or the permanent loan commitment can be deemed a security. The plaintiffs needed financing in order to build a hotel. Although the building of the hotel was an investment on the part of the plaintiffs, their efforts to obtain financing were purely commercial in character. The plaintiffs were in no sense relying on the efforts of either First of Denver or Saul to gain their profits. On the contrary, they were dependent on their own efforts to make the construction of the hotel a profitable venture. Applying the Zabriskie test, this is not the kind of transaction in which stock might be given. In short, there is nothing to indicate that this is anything other than the typical situation where a real estate developer goes into the open market to secure financing for his venture.
 
 
 11
 The plaintiffs assert that it is important to distinguish between the promise to fund in the future, i. e., the commitment, and the ultimate loan itself. The plaintiffs suggest that the actual loan may be a commercial matter, but that the prior commitment is nonetheless a security matter. No pertinent authority is cited in support of this proposition. In any event, we do not subscribe to such a distinction. To hold that the loan itself is not a security, but that the commitment is, would in our view exalt form over substance and would ignore economic reality. Such, in light of Vincent v. Moench, supra, we cannot do.
 
 
 12
 Plaintiffs rely on United States v. Austin, 462 F.2d 724 (10th Cir.), cert. denied, 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501 (1972). It is true that we held that the loan commitment letter in that case was a security within the meaning of the 1933 act. However, in our view the loan commitments in the present case are dissimilar to the loan commitments in Austin. Austin, a criminal case, involved a large-scale, advance-fee, loan swindle in which the defendants issued, along with false financial statements, not outright commitments, but back-up commitments guaranteeing the making of loans by others. Plaintiffs were induced, by advertising and solicitation, to put up money with the expectation of profits. The entire procedure was fraudulent and no loans were ever made. Suffice it to say, we believe the instant case to be distinguishable from Austin.
 
 
 13
 There are, of course, many types of "loan commitments." The label attached to a transaction is not determinative for purposes of the federal securities laws. The Supreme Court in United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 848, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) held that even transactions in "stock" may be excluded from the coverage of federal securities laws if the underlying transaction does not embody the characteristics typically associated with a "security." In accord, see our Chandler v. KEW, Incorporated, unpublished opinion filed April 19, 1977. And in Vincent v. Moench, supra, at 435, the Tenth Circuit stated that "(w)hether a particular investment constitutes a security depends upon the facts and circumstances of the case." We are simply holding in the instant case that the particular loan commitments made these plaintiffs by the First of Denver and Saul are not securities within the federal securities laws.
 
 
 14
 Judgment affirmed.