Boyd J. BROWN, Plaintiff,

v.

PRODUCERS LIVESTOCK LOAN COMPANY, a Utah Corporation, Producers Livestock Marketing Association, a Utah Corporation, GLS Livestock Management Inc., a Utah Corporation, George M. Smith, George L. Smith and Federal Intermediate Credit Bank of Berkeley, a Federally Chartered Banking Corporation, Defendants.

No. C 77–0179.

United States District Court, D. Utah, C. D.

Nov. 1, 1978.

Parker M. Nielson, Alan E. Walcher, Mary Lou Godbe, Salt Lake City, Utah, for plaintiff.

David E. West, Salt Lake City, Utah, for Producers Livestock Loan Co. and George M. Smith.

Arthur H. Nielsen and Stephen L. Henriod, Salt Lake City, Utah, for Producers Livestock Market Assn.

Walter R. Ellett, Murray, Utah, for GLS Livestock Mgt., Inc. and George L. Smith.

ALDON J. ANDERSON, Chief Judge.

This matter comes before the court on motions for summary judgment by all the defendants and a motion for partial summary judgment by the plaintiff. Defendants George L. Smith and GLS Livestock Management, Inc. have, subsequent to the submission of these motions, filed bankruptcy petitions and are not, therefore, subject to the court's jurisdiction at this time. Thus, the only motions acted upon in this order are the motions of plaintiff Brown and defendants Producers Livestock Loan Company, Producers Livestock Marketing Association, and George M. Smith. Defendant Federal Intermediate Credit Bank of Berkeley was previously dismissed from the action (Order of Dismissal, November 11, 1977).

## I. Statute of Limitations

The first issue raised by the defendants' motions is whether or not plaintiff's claims are barred by the applicable statute of limitations. In his complaint, plaintiff alleges violations of section 10 of the Exchange Act (15 U.S.C. § 78j) and Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5); sections 17(a), 12(1) and (2) of the Securities Act (15 U.S.C. §§ 77q[a], 77*l*[1] and [2]); section 206 of the Investment Advisers Act (15 U.S.C. § 80b–6); and sections 61–1–1 and 61–1–2 of the Utah Code. Each alleged violation will be dealt with separately.

### A. Section 10(b) and Rule 10b–5

There is no federal statute of limitations applicable to 10b–5 actions. Federal courts must, therefore, apply state law in determining the timeliness of actions brought under this section. This court has held that the applicable statute of limitations for claims brought under § 10(b) and Rule 10b–5 is § 78–12–26(3), Utah Code Annotated (1953) which requires that actions be brought within three years after the plaintiff discovered, or should have discovered, the alleged fraud. *Boone v. GLS Livestock Management, et al.,* No. C 75–178 (D.Utah 1976). This statute almost always presents a question of fact as to when plaintiff did discover or should have discovered the defendants' wrongdoing and therefore seldom lends itself to summary disposition. Defendants cite the case of *Gaudin v. KDF Corporation,* 576 F.2d 708 (6th Cir. 1978) in which the Sixth Circuit upheld a district court ruling on summary judgment that the statute of limitations had run on a § 10(b) claim. Both the district and circuit courts based their holdings on a careful factual analysis of all the circumstances known to plaintiff and concluded that if the plaintiff had been exercising due diligence he would have discovered the fraud more than three years prior to the institution of the suit. *Id.* at 712. While it is true here, as in *Gaudin,* that plaintiff had, within three years of the last transaction with defendants, evidence of a continuous decline in the value of his investment, the circumstances in this case are such that the decline *alone* might not have put plaintiff on notice of fraud. Plaintiff's investment was declining

at a time when the entire livestock market was falling. It is at least plausible that plaintiff could have initially attributed his loss to the general market decline and not become aware of any possible wrongdoing until after his account was audited in 1975. At least these circumstances create an issue of fact as to the reasonableness of plaintiff's behavior. Therefore, defendants' motions for summary judgment, based on the untimeliness of plaintiff's 10b–5 claim are denied.

### B. Section 17(a)

 The applicable statute of limitations for actions under § 17(a) is again § 78–12–26(3), Utah Code Annotated (1953). As stated above, on the current state of the record it is not clear that this suit is not within the three-year limitations period prescribed by that statute and, therefore, summary judgment on this claim is denied.

### C. Section 12(1)

Section 12(1) (15 U.S.C. § 77*l*) prohibits the sale or delivery of a security in or by means of an instrumentality of interstate commerce unless a registration statement is in effect for that security. The limitations period for violations of § 12(1), set forth in § 13 of the Act (15 U.S.C. § 77m), is one year from the date of violation upon which the action is based and in no event more than three years from the date on which the security was issued.

Plaintiff argues that this action is not barred by section 13 because it is not brought under section 12(1). The cause of action created by section 12(1) enables a party to "sue either at law or in equity . . ., to recover the consideration paid . . . upon tender of [the] security, or for damages if he no longer owns the security." The plaintiff asserts that "[t]his action, *by contrast*, is one for rescission under an entirely different section—a remedy *not* created by §§ 77*l*(1) and (2)." (Plaintiff's, Memorandum in Opposition to Defendants Motion for Summary Judgment, at 10, emphasis added). Rather, plaintiff argues that this action is based on the "voidability"

provisions of the securities laws, 15 U.S.C. §§ 77n and 78cc.

Three observations may be made about this argument. First plaintiff cites, in paragraph 10 of his complaint, § 12(1) as a partial basis for the court's jurisdiction. Therefore, one can assume that the plaintiff is, at least partially, suing under that section of the Securities Act. In paragraph 36 of his complaint, plaintiff does allege that the promissory note and related agreements are void under § 77n, but this is not the sole section invoked to support his cause of action.

 Second, if plaintiff is contending that § 12(1) does not allow for the remedy of rescission, he is clearly in error. Section 12(1) provides for precisely that remedy when it creates a cause of action for return of the consideration paid upon tender of the security. Rescission voids a contract from its inception and restores the parties to the conditions existing before the contract was made. By providing a cause of action for return of the consideration upon tender of the security, § 12(1) allows a court to void the contract and return the parties to the status quo; it allows a court to grant rescission. See *Adler v. Microwave Communications, Inc.*, 353 F.Supp. 624 (D.Mass.1973), aff'd 502 F.2d 1158 (1st Cir. 1973); *John Hopkins University v. Hutton*, 297 F.Supp. 1165, 1224 (D.Md.1968), aff'd 422 F.2d 1124 (4th Cir. 1970); Kominsky, An Analysis of Securities Litigation Under Section 12(2) and How It Compares With Rule 10b–5, 13 Houston Law Review 231, 280. Voiding a contract is a part of the rescissional remedy, not a separate form of relief under § 77n.

Third, § 77n provides as follows:

> any condition . . . binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

On its face, this section does no more than void contractual provisions that release contracting parties from liability under the securities laws. Moreover, the case law interpreting the section ascribes to it no other

meaning. *E. g., Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Starkman v. Seroussi*, 377 F.Supp. 518 (S.D. N.Y.1974). There is no indication that the promissory note and related agreements at issue here contained a provision waiving liability under the securities laws. More important, there is no indication in the statute nor the case law that § 77n provides a rescissional remedy separate from § 12(1).

It is true that § 78cc, also cited by plaintiff, is a much broader provision than § 77n. Section 78cc provides that all contracts made in violation of the 1934 Act are void. However, § 78cc does not directly apply to actions brought under § 12(1) of the 1933 Act. Given that § 12(1) of the 1933 Act provides a rescissional remedy, it is not necessary to look to the 1934 Act in order to fashion this form of relief.

Plaintiff makes a final argument based on the posture of this litigation. Initially, defendant Producers Livestock Loan sued plaintiff in state court seeking to recover on the promissory note signed by plaintiff. Plaintiff counterclaimed alleging securities law violations and removed the action to federal court. Concurrently, plaintiff filed this action in federal court. The two cases were consolidated and the original state court suit was then dismissed, on stipulation, in favor of this action.

■ Plaintiff argues that this procedural history and "the reason and logic of the statutory scheme" compel the court to find that "plaintiff's suit to invalidate his alleged contracts in the form of the note . . . must be governed by the same statutory limitations period . . . as the defendant's suit to enforce [the note.]" (Plaintiff's Memorandum at 10). The court finds no merit in this argument. This suit, which is the only one before the court, is a suit based, in part, on an alleged violation of § 12(1) of the 1933 Securities Act. There is not pending before this court, nor any other court that it is aware of, a suit by Producers Livestock Loan to recover on the promissory note. Plaintiff is not a counterclaimant in this action. His claim must be taken on its own terms according to the statutory

provisions creating it. Those provisions set forth a statute of limitations of one to three years. If plaintiff's argument were carried to its logical extreme, each time a securities fraud case involved a potential suit by a defendant on a promissory note, the statute of limitations on the securities claim would have to be extended by the time allowed defendant to sue on the note. While the court agrees that the securities laws are to be liberally construed to protect innocent investors, the court is also of the view that under §§ 12(1) and 13 the plaintiff must act with due diligence in protecting his rights. *John Hopkins University v. Hutton, supra* at 1223. This requirement is not extended by the unique procedural history of this case.

Accordingly, the court finds that the applicable statute of limitations governing section 12(1) claims is section 13 which requires that suit be brought within one year of the violation, but in no event more then three years after the security was issued.

■ The final problem is determining when the limitations period began to run. Section 12(1) can be violated several times within the same transaction and there is often a problem pinpointing the date on which the violation occurred for purposes of the limitations period. This problem does not, however, require much attention here. In *Boone v. GLS Livestock Management, Inc., supra*, this court held, under almost identical facts, that the statute of limitations on a 12(1) claim ran from the time plaintiff entered into the management agreement. Here that occurred in May, 1972. Since suit was not instituted until 1977, the 12(1) claim is barred.

### D. Section 12(2)

■ Section 12(2) (15 U.S.C. § 77*l*[2]) prohibits the making of an untrue statement or the omitting of a material fact in a prospectus or oral communication used in the offer or sale of a security. Section 13 sets forth the statute of limitations period for actions brought under § 12(2): one year from the date of discovery of the untrue statement or omission and in no event more

than three years from the date of sale. The statute is not tolled by equitable considerations. *Boone v. GLS Livestock Management, Inc., supra; Cowsar v. Regional Recreations, Inc.,* 65 F.R.D. 394, 397 (M.D.La. 1974). The last possible date on which a sale of a security by any of the defendants could have taken place is November, 1973, the date on which the last loan was made to plaintiff. Under § 13 no cause of action is maintainable on this claim after May, 1976. Therefore, suit having been instituted in 1977, plaintiff's claim based on § 12(2) is barred.

### E. State Law Claims

█ The applicable statute of limitations on these claims is § 61–1–22(5) which requires that suit be instituted within two years of the contract of sale. The contract of sale here was made in May, 1972, or, at the latest, November, 1973. Therefore, no cause of action may be brought after November, 1975, and plaintiff's claim is barred.

### F. Section 206 of the Investment Advisers Act

█ Section 206 of the Investment Advisers Act (15 U.S.C. § 80b–6) prohibits certain fraudulent practices in connection with investment adviser activity.[1] The Act does not contain its own statute of limitations and, therefore, the court must look to Utah law to find the applicable period. The language of the Act is strikingly similar to that of § 10(b) and, therefore, the court finds it appropriate to apply the same limitations period as applies to § 10(b) actions, *i. e.,* § 78–12–26(3) of the Utah Code. That statute requires that suit be brought within three years of the time when plaintiff knew

or should have known of the alleged fraud. Consistent with the portion of this opinion dealing with plaintiff's § 10(b) claim, the court finds that plaintiff's cause of action here is not barred by the applicable limitations period.

█ Nevertheless, the court also finds that plaintiff has failed to make out a claim under section 206. That section applies to

> any person, who, for compensation, engages in the business of advising others, . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as a part of regular business, issues or promulgates analyses or reports concerning securities; but does not [apply to] . . . any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor . . . .

15 U.S.C. § 80b–2(11). Defendants Producers Livestock Loan Co., Producers Livestock Marketing Assoc., and George M. Smith have all argued (and supported their arguments with affidavits) that they never advised plaintiff as to his investment and they never received any compensation therefor. Plaintiff has failed to respond to any of these arguments or affidavits. Finding no evidence to support plaintiff's Investment Advisers Act claim against these defendants and having before it evidence that brings plaintiff's claim into serious question, the court finds that as to the three defendants previously named, plaintiff has no cause of action under the Investment Advisers Act.

---

1. The United States Supreme Court has not yet ruled on whether there is a private cause of action under section 206. Two circuits, when faced with the question, have found an implied right of action and the commentators appear to support the circuits' conclusion. *Wilson v. First Houston Investment Corp.,* 566 F.2d 1235 (5th Cir. 1978); *Abrahamson v. Fleschner,* 568 F.2d 862 (2d Cir. 1977); Note, Private Causes of Action under Section 206 of the Investment Advisers Act, 74 Mich.L.Rev. 308; Case Note, Bolger v. Laventhol, Krekstein, Horwarth & Horwarth: Private Rights of Action Under the Investment Advisers Act, 48 Temple Law Quarterly 433. However, because this issue was not fully briefed by both parties, the court feels that this is not the appropriate case in which to decide the question for this district. For the purposes of the pending motions only, the court will assume, without deciding, that there is a private cause of action under section 206 of the Investment Advisers Act.

In sum, plaintiff's claims based on sections 10(b) and 17(a) are not barred by the statute of limitations. Those claims based on sections 12(1) and (2) are barred. As to defendants Producers Livestock Loan Company, Producers Livestock Marketing Assoc., and George M. Smith, plaintiff has failed to sustain a claim under section 206 of the Investment Advisers Act. The court reserves judgment on the validity of the section 206 claim as against George L. Smith and GLS Livestock Management Inc. until those parties are properly before the court.

## II. Extent of Direct Conduct on the Part of Producers Livestock Loan and George M. Smith

The above defendants allege that they were not issuers nor sellers of an investment contract and therefore cannot, as a matter of law, be held liable under the Securities Acts. In response, plaintiff points out that there is no allegation in the complaint that these defendants were issuers of an investment contract, nor need there be such an allegation under the applicable statutes. Further, plaintiff alleges, at several points in his complaint, direct conduct on the part of Producers and George M. Smith as well as agency, common scheme and control. These are sufficient allegations to being defendants within the purview of the securities laws. Defendant has failed to produce sufficient evidence on this motion to enable the court to rule that, as a matter of law, their involvement in the alleged transactions was insufficient to subject them to liability. Therefore, summary judgment on this ground is denied.

## III. Material Misrepresentation or Omission

Defendants next contend that there was no material misrepresentation or omission upon which plaintiff relied. In support of this proposition, defendants quote from plaintiff's deposition to the effect that plaintiff could not identify a single statement ever made by George L. Smith which was untrue when made; nor could he think of any fact George L. Smith neglected to tell him that would have affected his investment decision. Plaintiff counters with numerous responses given by him on cross-examination referring to omissions or misstatements made at the time of sale. In addition, evidence going to misstatements or omissions by George L. Smith would not necessarily exonerate the other defendants. The court finds that the existence of material misrepresentations or omissions is a disputed issue of fact and summary judgment on this ground is, therefore, also denied.

## IV. Scienter

Defendants Producers Livestock Loan and George M. Smith assert that plaintiff has failed to show any scienter on their part as required by *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Plaintiff has, however, alleged intentional misconduct in several paragraphs of his complaint (paragraphs 24, 28, 30, 33, 38). Further defendant has failed to come forward with any evidence to counter such allegations. Therefore, summary judgment on this ground is denied.

## V. Estoppel and Waiver

Defendants urge that plaintiff's claims are barred by estoppel and waiver. A determination of this allegation is dependent on a finding of when plaintiff should have discovered the alleged fraud. Consistent with what has been previously stated in this opinion, such a determination is a question of fact and not appropriate for summary judgment.

## VI. Existence of a Cause of Action against George M. Smith

Defendant George M. Smith asserts that there are no facts to support a cause of action against him. From the affidavit of Mr. Smith the following can be ascertained: 1) he is the general manager and chief administrative officer of Producers Livestock Loan Company, charged with the responsibility of operating the company in

accordance with policies established by the company's board of directors. Mr. Smith has occupied this position for the past 20 years; 2) the loan company is controlled by a board consisting of five persons. Defendant Smith has never served on the board; 3) Producers Livestock Loan Company has never engaged in any business other than acting as a lending institution. It has never engaged in the buying, selling or owning of livestock either for itself or others. It has never undertaken either directly or indirectly to give investment advice; 4) neither George M. Smith nor Producers has ever had any financial or other interest in George L. Smith's management contracts. The only form of compensation ever received by Producers on any loan transaction in which George L. Smith was involved is interest on the amount of its loan, charged in accordance with its usual interest rate; 5) the loan to plaintiff was made according to Producers' usual procedures; 6) the only personal communication between George M. Smith and plaintiff were one or two telephone calls in which Mr. Smith asked plaintiff if he were satisfied with the management services of George L. Smith.

Certainly these facts alone might not be enough to support a cause of action for securities law violations. However, the affidavit fails to meet certain of plaintiff's allegations, particularly those going to aiding and abetting, common scheme or plan and the charges relative to a combination with the Marketing Association. These factual issues remain to be resolved and therefore defendants' motion for summary judgment is denied.

### VII. Cause of Action Against Producers Livestock Marketing Association

The Marketing Association asks for summary judgment in its favor on the ground that it has never had anything to do with plaintiff's investment activities—either directly or indirectly. Further, the defendant asserts that it did not profit or lose on any transaction undertaken for plaintiff except as it would in the normal course of business. In support of these assertions, the Market-

ing Association has submitted the affidavit of Robert McMillan, chief accountant for the company. While Mr. McMillan's affidavit answers some of the allegations in plaintiff's complaint, it does not go to the allegation of common scheme or plan and is therefore insufficient to support summary judgment in defendant's favor.

### VIII. The Management Agreement and/or the Promissory Note and Related Agreements as a Security

In his complaint plaintiff asserts that both the management agreement with George L. Smith and GLS Livestock Management, Inc. (paragraphs 26, 27) and the promissory note and related documents (paragraphs 17, 18) are securities within the meaning of § 2(1) (15 U.S.C. § 77b[1]) of the Securities Act and § 3(a)(10) (15 U.S.C. § 78c(a)[10]) of the Exchange Act. Plaintiff asks for partial summary judgment on the issue of the note being a security and asserts that the issue of whether the management contract is a security is not subject to summary judgment. (Plaintiff's Memorandum at 15–16). Defendants argue there is no "investment contract" and therefore no security at issue in this case. They do not distinguish between the note and related loan documents and the management contract in making this assertion.

On the question of whether the management agreement between George L. Smith, GLS Livestock Management Services, Inc. and the plaintiff was a security, the court holds, on the precedent of *Boone v. GLS Livestock Management Services, Inc., supra,* that the agreement falls within the definition of a security as used both in the Securities and the Exchange Acts. The defendants cite *Fargo Partners v. Dain Corp.,* 540 F.2d 912 (8th Cir. 1976) in which the Eighth Circuit held that the sale of an apartment building with a management contract granted back to the vendor did not constitute a security and argue that the instant case fits within this precedent. In *Fargo,* however, the court relied heavily on the fact that the plaintiff had the absolute right to fire the defendant as manager. It

does not appear that the plaintiff here had such a right *vis a vis* George L. Smith or GLS Livestock Management Services. Defendants attempt to analogize *Fargo* by pointing out that plaintiff here had the ultimate right to get out of his investment. Therefore, defendants argue, the plaintiff here, as the plaintiff in *Fargo*, had ultimate control over the project. The court does not find this argument persuasive. In many cases involving securities violations, the investor may have the right to sell out at any time. This right does not change the basic nature of the investment, *i. e.*, an expectation of profits to be derived solely from the efforts of others. See *Boone v. GLS Livestock Management Services, Inc.*, at 4–7. The defendants' argument is insufficient to distinguish this case from *Boone* and the court holds that the *Boone* precedent controls.

The question of whether the note and related documents constitute a security is more complex. The plaintiff argues that a note "is a security by definition" and then cites that portion of § 2 of the 1933 Act which states "the term security means any note [or] evidence of indebtedness . . ." The above definition has not, however, been interpreted to bring within the securities laws *all* promissory notes. *Zabriskie v. Lewis*, 507 F.2d 546 (10th Cir. 1974). As stated in *Vincent v. Moench*, 473 F.2d 430 (10th Cir. 1973):

> [w]hether a particular investment constitutes a security depends upon the facts and circumstances of the case. . . . Substance is exalted over form and emphasis is placed on economic reality. *Id.* at 435.

Some circuits have suggested that the relevant test is whether the notes have primarily an investment or commercial character, with those having a commercial character being placed outside the statutory definition. *United California Bank v. THC Financial Corp.*, 557 F.2d 1351 (9th Cir. 1977); *Zeller v. Bogue Electric Manufacturing Corp.*, 476 F.2d 795 (2d Cir. 1973); *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir. 1973); *McClure v. First National Bank*, 497 F.2d 490 (5th Cir. 1974).

In *Sanders v. John Nuveen & Co.*, 463 F.2d 1075 (7th Cir. 1972), the court set forth the test as follows:

> When a prospective borrower approaches a bank for a loan and gives his note in consideration for it, the bank has purchased commercial paper. But a person who seeks to invest his money and receives a note in return for it has not purchased commercial paper in the usual sense. He has purchased a security investment. *Id.* at 1080.

If the proceeds of the note are used for consumer purposes, the note is usually seen as having a commercial character and as being outside the purview of the securities laws. See *Zabriskie v. Lewis, supra* and cases noted therein. However, as noted in *Zabriskie*, the mere fact that the loan proceeds are to be used for a business purpose does not mean an investment is involved. *Id.* at 551.

■ In order to determine whether a note is a security, the nature of the underlying relationship between the parties must be carefully examined. See *McClure v. First National Bank, supra* at 493. Here, the plaintiff used the proceeds of his loan for business purposes. And, indeed, the loan was closely related to plaintiff's investment. However, the nature of the relationship between plaintiff and Producers is not clear from present record. If Producers acted merely as a neutral third party with no connection to the investment scheme, then, perhaps, the note would not be considered a security. If, on the other hand, as plaintiff alleges, Producers was a part of a common scheme to promote and facilitate the investment, then perhaps another result is dictated. The resolution of this issue must await a trial on the merits and, therefore, plaintiff's motion for partial summary judgment is denied. Accordingly,

IT IS HEREBY ORDERED that defendants' motions for summary judgment on the § 10(b) and § 17(a) claims are denied. Defendants' motions for summary judgment on the §§ 12(1) and (2) claims and claims arising under the Investment Advisers Act

and Utah law are granted. Defendants' motions for summary judgment on grounds other than the statute of limitations are denied. The court finds that the management agreement between George L. Smith, GLS Livestock Management Services, Inc., and plaintiff constitutes a security. However, the court denies plaintiff's motion for partial summary judgment that the promissory note and related agreements are securities.